**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

—————————————————————————

|  |  |
|---|---|
| **DAVID MAXWELL,** | ) |
|  | ) |
| **Petitioner,** | ) |
|  | ) |
| *- against -* | ) |
|  | ) |
| **JAMES T. CONWAY,** | ) |
| **ATTICA CORRECTIONAL FACILITY** | ) |
|  | ) |
| **Respondent**. | ) |

**06 Civ. 14203 (KMK) (LMS)**

**REPORT AND**
**RECOMMENDATION**

—————————————————————————

**TO:   THE HONORABLE KENNETH M. KARAS,**
**UNITED STATES DISTRICT JUDGE**

<u>Pro se</u> petitioner, David Maxwell ("Petitioner"), files this petition for a writ of habeas

corpus pursuant to 28 U.S.C. § 2254 (the "Petition"), challenging his conviction for two counts

of reckless endangerment in the second degree, reckless driving, speeding, and unauthorized use

of a motor vehicle in the second degree.  (Respondent's Memorandum of Law ("Resp't Mem. of

Law") 1.)  Petitioner is currently incarcerated at Auburn Correctional Facility in Auburn, New

York, where he is serving determinate terms of imprisonment of one year for each count of

reckless endangerment in the second degree, thirty days for reckless driving, fifteen days for

speeding, and an indeterminate term of fifteen years to life for unauthorized use of a motor

vehicle in the second degree.  (Resp't Mem. 1-2.)  Petitioner's sentences run concurrently with

each other.  (Resp't Mem. Of Law 2.)   Petitioner is also mandated to pay a fine of $210.  (Resp't

Mem. Of Law 2.)

Petitioner seeks habeas relief claiming that he was denied his right to a direct appeal

because of the inaccuracies contained in the trial transcript, that he was denied effective

assistance of appellate counsel, that he was denied a fair trial, that the trial court abused its discretion by allowing the prosecution to submit two persistent felony offender statements, that he was denied due process as a result of prosecutorial misconduct, and that the police manufactured this crime.  (Pet. ¶ 12.)  For the reasons set forth below, I conclude, and respectfully recommend that Your Honor should conclude, that this petition for a writ of habeas corpus should be denied in its entirety.

I.    **BACKGROUND**

   A.    **The Crime**

   On October 5, 2000, Yonkers police officers were conducting surveillance on a house in Yonkers when Detective Dolan observed Petitioner driving a jeep.  T: 447-48.[1]  Something in the way Petitioner operated the vehicle caused Detective Dolan to radio Detective Delango and advise him of the presence of the car.  T: 452-53.  Detective Delango followed the jeep, noted the license plate number of the jeep, and relayed the information to Detective Dolan, who then contacted headquarters with the number so that it could be run through the system.  T: 452, 472-73.  Headquarters informed Detective Delango that the vehicle Petitioner was operating had been reported stolen.  T: 474.  Detective Delango and Detective Nicastro, driving unmarked police cars, pursued Petitioner, while Detective Wilson used his unmarked police car to block the street upon which Petitioner was traveling.  T: 476.  Detective Delango was driving on the driver's side of Petitioner's car and Detective Nicastro was following behind Petitioner.  T: 477.  Detectives

---

[1]The abbreviation "T" followed by a page number refers to the relevant pages of the transcript from Petitioner's jury trial beginning on May 2, 2001.  The abbreviation "F" followed by a page number refers to the pre-felony offender hearing conducted on June 19, 2001.  The abbreviation "P" followed by a page number refers to the persistent felony offender hearing held on August 29, 2001.  The abbreviation "S" followed by a page number refers to the sentencing hearing held on October 24, 2001.

Delango, Nicastro and Wilson activated their lights, Detectives Delango and Wilson displayed their badges, and all three officers attempted to get Petitioner to stop.  T: 477-78.  Petitioner finally stopped the vehicle as he approached Detective Wilson's road block.  T: 479.  There was conflicting evidence at trial regarding whether Petitioner put his car in reverse, crashing into Detective Nicastro's vehicle, or whether Detective Nicastro drove into the rear of Petitioner's car.  Either way, a collision was caused with Petitioner and Detective Nicastro's cars.  Detective Wilson, who was standing outside of his vehicle in front of Petitioner, displaying his badge, instructed Petitioner to stop.  T: 583-84.  Regardless, Petitioner drove the car forward, causing Detective Wilson to have to leap out of the way to avoid getting hit.  T: 587.  Petitioner crashed into a car parked along the side of the street, as well as Detective Wilson's unmarked police car, and then drove onto the Cross County Parkway where a high-speed chase ensued with a marked police vehicle.  T: 588, 674-76.  Petitioner then entered the Hutchinson River Parkway where he continued to be pursued by a marked police vehicle.  T: 688.  Petitioner exited the Parkway, crashed into another vehicle, and fled on foot.  T: 706, 708.  Detective Fennell engaged in a foot pursuit at the same time that several other police vehicles arrived in the vicinity.  T: 744.  Petitioner then surrendered and was placed under arrest.  T: 710.

Petitioner was charged with two counts of assault in the second degree, three counts of reckless endangerment in the first degree, criminal possession of a weapon in the third degree, criminal possession of stolen property in the fourth degree, reckless driving, unsafe speed, unauthorized use of a motor vehicle in the first degree, and unauthorized use of a motor vehicle in the second degree.  (Resp't Mem. Of Law, Ex. A.)

**B.     The Trial**

Petitioner was tried by a jury in Westchester County Court.  (Aff. In Opp. 4.)  Judge

Mary Smith presided. (Aff. In Opp. 4.) Detective Dolan, Detective Nicastro, Detective Delango, and Detective Wilson testified that Petitioner had attempted to evade their pursuit despite their emergency lights and their displayed police badges, that Petitioner had intentionally backed into Detective Nicastro's vehicle, that Petitioner had driven toward Detective Wilson, causing Detective Wilson to jump out of the way to avoid getting run over by Petitioner, and that Petitioner had crashed into Detective Wilson's car before getting on to the Cross County Parkway. T: 477-80, 584-589, 779-80. Detective Fennell, also of the Yonkers Police Department, testified to the erratic driving of Petitioner as he had fled from the attempted road block. T: 673-77. According to Detective Fennell, Petitioner had been driving very fast and changing lanes erratically despite the presence of other drivers. T: 682-84. Ms. Cedeno, the stolen car's owner, testified that the car Petitioner was driving during the incident was her car, that she had previously reported it stolen, and that she had never given anyone permission to use or possess her car. T: 558-61.

    The taped transmission of the officers' conversations over the radios as they were trying to effect the stop was introduced into evidence. T: 504. Petitioner's counsel used the tape during cross-examination to try to controvert the officers' testimony. T: 512. Specifically, Petitioner's counsel pointed to the portion of the tape where Detective Nicastro had said "hit the vehicle, hit the vehicle." T: 512. It was Petitioner's counsel's position that Detective Nicastro had hit Petitioner's car, not that Petitioner backed into Detective Nicastro's car. T: 512, 543-44.

    Petitioner did not testify, nor did he submit any evidence or put on any other witnesses. T: 804-05. After both the prosecution and the defense had rested, Petitioner's counsel made a motion for an order of dismissal as to every count. T: 807. The Court dismissed Count 3, which had charged Petitioner with reckless endangerment in the first degree. T: 814-15. The court

denied counsel's motion to dismiss Counts 10 and 11, but Judge Smith agreed to instruct the jury that if they found Petitioner guilty of criminal possession of stolen property in the fourth degree (Count 7), they should not consider Counts 10 and 11.  T: 828.  Defense counsel agreed.  T: 819, 828.

During summation Petitioner's counsel argued that Petitioner was unaware that the officers were officers because they were dressed in plain clothes and were in unmarked police cars.  T: 847.  As such, and due to the manner in which the officers converged on Petitioner, Petitioner reasonably feared for his safety and his resulting conduct was reasonable.  T: 847-48. Counsel again argued that Detective Nicastro hit Petitioner's vehicle, rather than Petitioner hitting Detective Nicastro's vehicle.  T: 850.

Before charging the jury, Judge Smith went over the verdict sheet with counsel and informed them of her decision to dismiss Count 10.  T: 890-91.  Judge Smith reiterated her intention to leave in Count 11 as a lesser included offense of Count 7.  T: 891.  Defense counsel did not object.  T: 892.  Judge Smith then charged the jury, including an instruction on Count 11. T: 975.  Judge Smith instructed the jury that Count 11 should only be considered if they were to find Petitioner not guilty of count 7.  T: 978.

The jury convicted Petitioner of two counts of reckless endangerment in the second degree (lesser included offense of Counts 4 and 5), one as to Detective Wilson and one as to other motorists, reckless driving (Count 8), speeding (Count 9), and unauthorized use of a motor vehicle in the second degree (Count 11).  T: 1014-16.  The prosecution filed a persistent felony offender statement requesting a hearing to determine whether Petitioner should be sentenced as a persistent felony offender due to his prior felony convictions.  P: 4.  On July 3, 2001, the court issued an order stating that a persistent felony offender hearing was warranted.  At the hearing,

on August 29, 2001, Petitioner admitted to his prior felony convictions, he did not contest the fact of the convictions nor the constitutionality of the convictions.  P: 14.  Petitioner only contested the factual allegations contained within the persistent felony offender statement.  P: 14. Additionally, Petitioner testified regarding the plea negotiations that had taken place prior to trial.  P: 44-46.  Petitioner stated that he could not take the plea that had been offered because he could not plead guilty to a crime that he did not commit.  P: 45.  Petitioner also stated that he and his attorney had discussed the fact that the People intended to seek persistent felony offender status if the matter proceeded to trial, meaning that he could be sentenced as a persistent felony offender.  P: 45-46.  Petitioner went on to say that his record was not an accurate depiction of his character because there were cases that he had pled guilty to, though he claimed that he had been innocent, because of the decreased jail time that had been offered if he pled guilty.  P: 51.

The court discussed Petitioner's criminal history.  P: 27-28, 39.  The prior felony convictions relied on by the prosecution in support of its application to sentence Petitioner as a persistent felony offender were criminal possession of a controlled substance in the fourth degree (1993), criminal possession of stolen property in the third degree (1998), grand larceny in the third degree (1988), criminal possession of stolen property in the third degree (1985), grand larceny in the fourth degree (1985), and criminal possession of stolen property in the third degree (1985).  P: 19-20.  Petitioner also had at least eight misdemeanor convictions.  S: 3. Considering Petitioner's character, the underlying facts of the case, and Petitioner's criminal history, the court adjudged the Petitioner a persistent felony offender. P: 52.

On October 24, 2001, Judge Smith sentenced Petitioner to a term of one year incarceration for each count of reckless endangerment in the second degree, thirty days for the violation of reckless driving, fifteen days incarceration for the violation of speeding, and an

indeterminate term of imprisonment of fifteen years to life for the crime of unauthorized use of a motor vehicle in the second degree.  S: 16.  The sentences were ordered to run concurrently.  S: 17.

**C.**    **Post-Trial Proceedings**

*1.*    ***State Court Proceedings***

Petitioner's appellate attorney, Barry Warhit, filed an appeal on Petitioner's behalf on August 3, 2004.  (Resp't Mem. Of Law, Ex. B.)  The sole question presented in this appeal was whether the trial court had abused its discretion when it sentenced Petitioner as a persistent felony offender to fifteen years to life imprisonment.  (Resp't Mem. Of Law, Ex. B, p. 5.) Petitioner's attorney argued that the prosecution failed to establish sufficient facts to allow the court to determine that Petitioner was a persistent felony offender and that Petitioner was being punished for exercising his right to trial.  (Resp't Mem. Of Law, Ex. B, p. 9-10.)  The State filed a memorandum in opposition arguing that the court did not abuse its discretion when it sentenced Petitioner as a persistent felony offender.  (Resp't Mem. Of Law, Ex. C.)

On February 2, 2005, Petitioner filed a supplemental appellate brief on his own behalf. (Resp't Mem. Of Law, Ex. D.)  In this brief, Petitioner argued that the trial court's failure to inform counsel prior to summation of its decision to submit Count 11 as a lesser included offense, deprived the Petitioner of his right to a full and adequate summation, that the trial court abused its discretion by considering statements made by a prospective juror during voir dire and by allowing the Assistant District Attorney to submit two persistent felony offender statements, that the Westchester County District Attorney's Office improperly withheld <u>Rosario</u> material, and that the Yonkers police department manufactured a crime by falsifying reports, planting evidence and committing perjury.  (Resp't Mem. Of Law, Ex. D, p. i.)  The State filed a supplemental brief in opposition disputing Petitioner's additional contentions.  (Resp't Mem. Of

Law, Ex. E.)

The Appellate Division affirmed the judgment on October 11, 2005, stating that the nature of the defendant's criminal conduct, his history, and his character, all set forth in the record, sufficiently supported the trial court's decision to sentence Petitioner as a persistent felony offender.  (Resp't Mem. Of Law, Ex. F), People v. Maxwell, 22 A.D.2d 607 (2d Dept. 2005).  The Appellate Division further ruled that Petitioner's assertion that the court sentenced him out of vindictiveness for refusing to plead guilty was without merit.  (Citing to People v. Thomas, 255 AD2d 468.)  (Resp't Mem. Of Law, Ex. F.)  Lastly, the Appellate Division found all remaining issues raised by Petitioner to be unpreserved and, in addition, to be without merit.  (Resp't Mem. Of Law, Ex. F.)  The application seeking leave to appeal to the New York Court of Appeals was denied, having not presented a question of law "which ought to be reviewed."  (Resp't Mem. Of Law, Ex. G), People v. Maxwell, 6 N.Y.2d 756 (2005).

Subsequently, the Petitioner, proceeding pro se, filed a motion for a writ of error coram nobis claiming ineffective assistance of appellate counsel.  (Resp't Mem. Of Law, Ex. H.) Petitioner alleged that Mr. Warhit did not listen to his arguments regarding the transcript errors and that he instead raised frivolous arguments.  The Appellate Division denied Petitioner's application for a writ of error coram nobis on May 2, 2006.  (Resp't Mem. Of Law, Ex. K), People v. Maxwell, 29 A.D.2d 604 (2d Dept. 2006).  The Appellate Division specifically held that Petitioner had "failed to establish that he was denied effective assistance of appellate counsel."  (Citing Jones v. Barnes, 463 U.S. 745; People v. Stultz, 2 NY3d 277.)  The New York Court of Appeals denied leave to appeal, stating that there was no question of law for review. (Resp't Mem. Of Law, Ex. L), People v. Maxwell, 7 N.Y.2d 815 (2006).

## 2.    *Federal Court Proceedings*

Petitioner timely filed this Petition on December 6, 2006.  Petitioner alleges that he was denied his right to a direct appeal, that he received ineffective assistance of appellate counsel, that the trial court failed to inform counsel prior to summation of its decision to submit a lesser included offense, that the trial court abused its discretion by allowing the prosecutor two opportunities to submit a persistent felony offender statement, that the prosecutor committed misconduct, and that the police manufactured this crime.  (Pet. ¶ 12.)  Respondent filed an affirmation in opposition and memorandum of law on April 3, 2007.  Respondent argues that the Petition should be denied in its entirety because the claims presented are not cognizable for federal habeas review or are completely without merit.  (Resp't Mem. Of Law.)

## II.    DISCUSSION

### A.    Standard of Review

"Habeas review is an extraordinary remedy."  Bousley v. United States, 523 U.S. 614, 621 (1998) (citing Reed v. Farley, 512 U.S. 339, 354 (1994)).  To be granted a writ of habeas corpus from a federal district court, a petitioner must fully and carefully comply with the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  Under the AEDPA, all state remedies must be exhausted before a federal court may consider a state prisoner's petition for a writ of habeas corpus.  28 U.S.C. § 2254(b)(1)(A); see also Picard v. Connor, 404 U.S. 270, 275 (1971).  In the interests of comity and expeditious federal review, states should have the first opportunity to address and correct alleged violations of a state prisoner's federal rights.  See Coleman v. Thompson, 501 U.S. 722, 731 (1991); see also Daye v. Attorney General, 696 F.2d 186, 190-91 (2d Cir. 1982).  In pertinent part, the exhaustion requirement of the federal habeas corpus statute states:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that--

> (A)    the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i)  there is an absence of available State corrective process; or
>
>     (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant; . . .

> (b)(3)(c)  An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he [or she] has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. §§ 2254(b)(1) and (b)(3)(3).

The Second Circuit has adopted a two-stage inquiry to determine whether the exhaustion doctrine has been satisfied.  See Klein v. Harris, 667 F.2d 274, 282 (1981).  First, the petitioner must have "fairly presented" his or her federal constitutional claim to the appropriate state courts.  Picard v. Connor, 404 U.S. at 275-76.  "A claim has been 'fairly presented' if the state courts are apprised of 'both the factual and the legal premises of the claim [the petitioner] asserts in federal court.' "  Jones v. Vacco, 126 F.3d 408, 413 (2d Cir. 1997) (quoting Daye, 696 F.2d at 191).  In other words, the claim must have been presented in a way that is "likely to alert the court to [its] federal nature."  Daye, 696 F.2d at 192.  The fair presentation requirement is satisfied if the state court brief contains phrases, such as "under the Due Process Clause" or "under the Constitution," that point to the petitioner's reliance on the United States Constitution as his or her legal basis for relief.  Klein, 667 F.2d at 282 (internal citations omitted).  A claim may be considered "presented" even if the federal grounds were not explicitly asserted before the state courts if the petitioner, in asserting his or her claim before the state court, did one of the following: (1) relied on pertinent federal cases that employ constitutional analysis, (2) relied on pertinent state cases that apply constitutional analysis in like fact situations, (3) asserted his or her claim in terms so particular as to call to mind specific constitutionally-protected rights; or (4) alleged a fact pattern that falls within the mainstream of constitutional litigation.  See Daye, 696

F.2d at 194.

Second, having fairly presented his or her federal constitutional claim to the appropriate state court and having been denied relief, the petitioner must appeal his or her conviction to the highest state court.  Klein, 667 F.2d at 282.  Where a petitioner fails to present his or her federal constitutional claim to the highest state court, the claim cannot be considered exhausted.  Id. (citing Williams v. Greco, 442 F. Supp. 831, 833 (S.D.N.Y.1977)).  There is, however, another avenue available for exhaustion purposes.  A petitioner who has failed to exhaust state remedies by pursuing a direct appeal may satisfy the exhaustion requirement by utilizing available state methods for collaterally attacking his or her state conviction.  See Klein, 667 F.2d at 282; see also Johnson v. Metz, 609 F.2d 1052, 1055-56 (2d Cir. 1979) (instructing habeas petitioner who did not fairly present claim in the course of his direct appeals in New York state courts to proceed by filing a motion to vacate judgment pursuant to New York CPL § 440.10).  If collateral relief is denied, the petitioner may satisfy the exhaustion requirement by employing the state appellate procedures available for review of such denial.  Id. at 282-83.  After a petitioner has met the exhaustion requirements, a federal district court may generally hear "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a state court" only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

"The threshold inquiry under AEDPA is whether the petitioner 'seeks to apply a rule of law that was clearly established at the time his [or her] state-court conviction became final.' " Kennaugh v. Miller, 289 F.3d 36, 42 (2d Cir. 2002) (quoting Williams v. Taylor, 529 U.S. 362, 390 (2000)).  When a petitioner asserts a claim that involves an issue of clearly established federal law which was decided on its merits during the petitioner's state court appellate process,

a federal court reviewing the petitioner's request for a writ of habeas corpus must apply

AEDPA's deferential standard of review.  28 U.S.C. § 2254(d).  Under AEDPA's deferential

standard of review, a court may not grant a petition for a writ of habeas corpus unless the state

court adjudication: (1) resulted in a decision that was "contrary to, or involved an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court of the

United States," or (2) resulted in a decision that was "based on an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d).

Under the first prong of AEDPA, a state court decision is contrary to federal law only if a

"state court arrives at a conclusion opposite to that reached by the [the Supreme Court] on a

question of law or if the state court decides a case differently than [the Supreme Court] on a set

of materially indistinguishable facts."  Williams, 529 U.S. at 413.  A decision involves an

"unreasonable application" of Supreme Court precedent if the state court "identifies the correct

governing legal rule from the Supreme Court cases but unreasonably applies it to the facts of the

particular state prisoner's case," or if it "either unreasonably extends a legal principle from

[Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to

extend that principle to a new context where it should apply."  Id. at 407.

Under the second prong of AEDPA, the factual findings of state courts are presumed to

be correct.  Nelson v. Walker, 121 F.3d 828, 833 (2d Cir. 1997).  The petitioner must rebut this

presumption by "clear and convincing evidence."  28 U.S.C. § 2254(e)(1).

## B.   Inaccurate Trial Transcripts

Petitioner contends that his due process and equal protection rights were violated because

his trial transcripts were inaccurate and purposely altered, preventing him from effecting his

appellate rights.  (Pet. Mem. Of Law, 14.)  Petitioner also argues that he did not receive

transcripts from numerous persistent felony offender hearings that were allegedly held.  (Pet. Mem. Of Law 16.)[2]

"There is no federal constitutional right to a state criminal appeal under the 6th Amendment."  Shire v. Costell, No. 07-CV-285, 2008 WL 2323379, at *6 (N.D.N.Y. June 2, 2008).[3]  Additionally, allegations regarding the accuracy of the state court trial transcript are state law claims and therefore are  "not cognizable on federal habeas review."  Malsh v. Hanslmaier, N. 94-CV-687, 1996 WL 204347, at *3 (N.D.N.Y. Apr. 11, 1996).  However, "where a state provides a statutory right to appeal, that right must meet the constitutional requirements of due process."  Burrell v. Swartz, 558 F.Supp. 91, 92 (S.D.N.Y. 1983).  Accordingly, the state must afford defendants with "fair and adequate procedure[s] for settling transcripts."  Id.  While there is no constitutional right to an absolutely accurate trial transcript, Burrell, 558 F.Supp. at 92, indigent defendants generally have a right to a reasonably accurate transcript, Taveras v. Smith, 463 F.3d 141, 148 (2d Cir.2006); Benjamin v. Greiner, 296 F.Supp.2d 321, 333 (E.D.N.Y. 2003), if one is necessary to effect an appeal.  Halbert v. Michigan, 545 U.S. 605, 610 (2005).  As such, a two-pronged test has been established to show that due process rights were violated in connection with inaccurate trial transcripts: (1) a petitioner must show "either the unfairness of available settlement procedures or the existence of intentional tampering"; and (2) petitioner must prove that the alleged errors contained in the

---

[2]This issue was raised before Judge Smith in state court, and was raised in applications made to the undersigned.  There is no record of Petitioner seeking leave to appeal from Judge Smith's ruling to the Appellate Division or the Court of Appeals.  The issue is therefore unexhausted.  However, the issue is nevertheless addressed herein on the merits, pursuant to 28 U.S.C. § 2254(a)(2).

[3]Cases cited within this report and recommendation that are available only through electronic sources are appended to Petitioner's copy of this report and recommendation.

transcripts "prejudice his [or her] statutory right to appeal." Burrell, 558 F.Supp. at 92.

Additionally, when alleging that a transcript is inaccurate, a petitioner must overcome the

"presumption of regularity" that attaches to criminal proceedings. Shire, 2008 WL 2323379, at

*7.

      Petitioner has failed to allege any unfairness in the settlement hearing procedures. In

fact, Petitioner has had several opportunities to raise the issue of the accuracy of his transcripts at

the state court level. Judge Smith denied Petitioner's motion to settle the transcript of his jury

trial finding that there may have been errors in the trial transcript, but alluding to the fact that

those errors were likely *de minimus*. (Pet.'s Mem. Of Law, Ex. C.) Judge Smith also denied

Petitioner's motion to settle the record of the June 19, 2001, hearing, as his proposed

amendments to the existing transcript "seem[ed] to be manufactured of whole cloth and [were]

completely different from the certified transcript." (Order dated Nov. 1, 2007.)[4] This Court has

ruled on two previous occasions that Petitioner is not entitled to a transcript settlement hearing in

this Court on the basis that any issues involving the trial transcript are a state issue, and

Petitioner has had access to the state courts on this issue. (Docket Entry 14, Docket Entry 15.)

Furthermore, Petitioner has not alleged that anyone deliberately tampered with the transcripts.

      Petitioner is correct that if the errors he alleges occurred had in fact occurred, this would

have greatly prejudiced him. If the Court were to believe Petitioner, Counts 10 and 11 would

have been dismissed after summation, but reinstated prior to charging the jury. Upon

examination of the proposed amendments contained in Petitioner's 2004 application for a

settlement hearing of the trial transcript as compared to the transcript provided in the record, it is

---

[4]This order was not part of the official court's record, but a copy was provided to the undersigned. As such, I direct the Clerk of the Court to docket this order simultaneously with this Report and Recommendation, as "Exhibit 1" to the Affirmation in Opposition.

clear that Petitioner has changed the entire course of the proceedings for his benefit without any

evidence supporting the changes.[5]  (See Ex. A, Pet. Mem. Of Law as compared to T: 818, 819,

890-91.)  Multiple pages of Petitioner's proposed dialogue are drastically different from what

was actually transcribed.  However, the transcriptionist reviewed the transcripts and discovered

one error that is of minimal consequence to these proceedings.  (Resp't Mem. Of Law, Ex. O.)

Ultimately, Petitioner's alleged errors are completely unsubstantiated, and he had a full and fair

opportunity to present this argument to the state trial court.  This claim should therefore be

dismissed.  See Dory v. Comm'r of Corr. Of New York, 865 F.2d 44, 45 (2d Cir.1989)

(summary dismissal of a habeas petition is justified where the allegations are "vague,

conclusory, or palpably incredible" (internal quotation marks omitted.))  Petitioner has failed to

overcome the presumption of regularity and failed to satisfy both prongs required to establish a

violation of his due process rights.

As to the allegedly missing transcripts, a letter submitted by Joseph Latino, of the

Westchester County District Attorney's Office, establishes that there were transcribed

proceedings that took place on June 19, 2001.  (Docket Entry 13.) That transcript has been

provided to Petitioner.  At that hearing, Judge Smith indicated her intention to issue a decision

determining whether a persistent felony offender hearing would be appropriate.  (Docket Entry

13.)  According to the District Attorney, at the June 26, 2001, hearing, which was not

transcribed, the matter was simply put over to July 3, 2001 without any substantive proceedings

taking place.  (Docket Entry 13.) There is no reason to believe that this is not the case, and

---

[5]For example, Petitioner could have submitted an affidavit from his trial counsel or from a court observer substantiating his proposed changes, but he did not offer any such support.  In fact, his appellate counsel disclaimed the existence of substantive errors.  (Resp't Mem. Of Law, Ex. N.)

Petitioner has not offered any proof suggesting otherwise.  Instead of holding a hearing, the Judge issued an order on July 3, 2001, finding that a persistent felony offender hearing was warranted and ordered that hearing to occur on July 26, 2001.  (Docket Entry 14.) The hearing was actually held on August 29, 2001.  (Docket Entry 14.)  As such, aside from the June 19, 2001 transcript, which Petitioner ultimately obtained, there were no other relevant and material transcripts which the Petitioner did not receive.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claims of due process and equal protection violations due to inaccurate transcripts be denied.

## C. <u>Ineffective Assistance of Appellate Counsel</u>

Petitioner claims that he was denied effective assistance of appellate counsel because his attorney submitted a poorly drafted argument, which failed to argue obvious claims and did not argue that the unauthorized use of a motor vehicle count was dismissed at the charge conference. This issue was fully exhausted in the state court.  <u>See</u> Resp't Mem. Of Law, Ex. H, I, J, K, L, and M.

To sustain a claim of ineffective assistance of appellate counsel, Petitioner must show that appellate counsel ignored obvious issues and instead pursued significantly weaker issues, and that had appellate counsel argued the correct issues, there is a reasonable probability that they would have been successful before the highest state court.  <u>Hemstreet v. Greiner</u>, 367 F.3d 135, 141 (2d Cir.2004).  There is a strong presumption that counsel's conduct was professionally reasonable.  <u>Id</u>.  To overcome the presumption of reasonableness, Petitioner must put forth those issues which he believes to be more meritorious for the court to consider.  <u>See</u> <u>Hemstreet</u>, 367 F.3d at 141; <u>Smith v. Robbins</u>, 528 U.S. 259, 288, 120 S.Ct. 746, 765 (2000).  Furthermore, the

Supreme Court has stated that appellate counsel is not required to raise any and all claims requested by the client "if counsel, as a matter of professional judgment, decides not to present those points." Jones v. Barnes, 463 U.S. 745, 751, 103 S.Ct. 3308, 3312 (1983). The Court recognizes the "superior ability of trained counsel in the 'examination into the record, research of the law, and marshalling of arguments on [the appellant's] behalf.'" Jones, 463 U.S. at 751, 103 S.Ct. at 3313, (quoting Douglas v. California, 372 U.S., 353, 358, 83 S.Ct., 814, 817 (1963)).

Petitioner cannot sustain his claim of ineffective assistance of appellate counsel. First, the unauthorized use of a motor vehicle charge was not dismissed at the charge conference. T: 819, 828. Therefore, appellate counsel cannot be rendered ineffective for failing to raise the issue on appeal. Second, Petitioner's general statement that counsel submitted a poorly drafted brief that failed to argue obvious claims of error, without specifically illuminating what those obvious claims of error were, is insufficient. See Dory, 865 F.2d at 45 (vague and conclusory allegations warrant summary dismissal of habeas petitions); See Hemstreet, 367 F.3d at 141; Smith, 528 U.S. at 288, 120 S.Ct. at 765. Petitioner has failed to offer any evidence to overcome the presumption that Mr. Warhit acted in a professionally reasonable manner, analyzed Petitioner's case, and put forth the claim he believed to have the most merit, that being that the court abused its discretion in sentencing Petitioner as a persistent felony offender. (Resp't Mem. Of Law, Ex. B, p. 5.) Additionally, Mr. Warhit, as demonstrated by his letter to Judge Mary Smith, considered Petitioner's request in having a transcript settlement hearing, but decided it was not worth pursuing as there were "no errors of importance and any errors [he] found were of no legal significance and can be characterized as minimal." (Resp't Mem. Of Law, Ex. N.) As mentioned *supra* in section IIB, this Court agrees that there were no substantive mistakes in the

transcripts.

Lastly, were Petitioner able to overcome the presumption of reasonableness, Petitioner cannot establish that he likely would have been successful before the state's highest court. Petitioner ultimately did supplement Mr. Warhit's appellate brief, raising many of the same claims Petitioner brings in this petition, and the appeal was still denied. (Resp't Mem. Of Law, Ex. F.) Specifically, the Appellate Division found that Judge Smith appropriately exercised her discretion in sentencing Petitioner as a persistent felony offender, that given the record, such a sentence was warranted, and that any allegation that Petitioner was sentenced as a persistent felony offender out of vindictiveness for failing to take a plea was without merit. (Resp't Mem. Of Law, Ex. F.) The Appellate Division rendered all other issues as being unpreserved and without merit. (Resp't Mem. Of Law, Ex. F.) The New York Court of Appeals denied Petitioner leave to appeal to the Court of Appeals, finding no question of law which ought to be reviewed. (Resp't Mem. Of Law, Ex. G.) Petitioner then filed an application for a writ of error coram nobis on the grounds that he was denied effective assistance of appellate counsel. (Resp't Mem. Of Law, Ex. H.) The Appellate Division denied Petitioner's application, stating that Petitioner had failed to establish that he was denied effective assistance of appellate counsel, citing to Jones v. Barnes, 463 U.S. 745. (Resp't Mem. Of Law, Ex. K.) Again, the Court of Appeals denied Petitioner leave to appeal, finding no question of law to be reviewed. (Resp't Mem. Of Law, Ex. L.) Moreover, given my review of the issues presented in this Petition and finding no merit to any of them, I cannot find that had these issues been presented before the highest state court, there is a reasonable probability that Petitioner would have been successful. See supra Section IIB and infra Section IID, IIE, and IIF. Therefore, even if Petitioner could establish that appellate counsel's representation was professionally unreasonable, which he

cannot, his claim for ineffective assistance would still fail as he could not establish that there was a reasonable probability that his claims would have been successful.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude, that Petitioner's claim of ineffective assistance of appellate counsel be denied.

### D. Denial of a fair trial

Petitioner alleges that he was denied his right to a fair trial because Judge Smith dismissed Count 11, unauthorized use of a motor vehicle, at the charge conference but still submitted that charge to the jury as a lesser included offense of Count 7.  Petitioner also argues that Judge Smith should have dismissed Count 7 when she dismissed Count 11 because they were multiplicitous (the transcript denotes an argument that these counts were duplicitous).  T: 818-19.[6]

Upon review of the transcripts, it is clear that Judge Smith denied Petitioner's counsel's motion to dismiss Counts 10 and 11.  T: 819.  However, the Judge agreed to submit them as lesser included offenses of Count 7.  T: 828.  Petitioner's attorney agreed.  T: 829.  After summation, the Judge decided to dismiss Count 10, but maintained that Count 11 would be submitted as a lesser included offense of Count 7.  T: 890-891.  Petitioner's attorney agreed to this.  T: 892.  Therefore, contrary to Petitioner's argument, Judge Smith was not obligated to rearraign Petitioner on Count 11.  Further, Judge Smith was not obligated to dismiss Count 7 because of her dismissal of Count 11 because at no time did Judge Smith dismiss Count 11.

---

[6]This issue was presented to the state court in Petitioner's pro se supplemental brief to the Appellate Division, and was a subject of the application for leave to appeal to the Court of Appeals.  It is therefore exhausted, but the Appellate Division found that it was "unpreserved for appellate review...and, in any event...without merit."  (Resp't Mem. Of Law, Ex. F, p. 2.)  This may constitute a procedural bar to this Court's review of the claim.  See Galdamez v. Keane, 394 F.2d 68, 77 (2d. Cir.2005.)  The claim is nevertheless reviewed herein on the merits.

Lastly, the only change Judge Smith made after defense counsel's summation was to dismiss Count 10, which was actually to Petitioner's benefit. As such, there was no prejudice to Petitioner.

Therefore, I conclude, and respectfully recommend that you conclude, that Petitioner's claim of denial of a fair trial be denied.

### D.  Abuse of discretion by trial court

Petitioner contends that the trial court abused its discretion by allowing the prosecutor to submit two persistent felony offender statements over defense counsel's objections. While it is not entirely clear what Petitioner is attempting to assert, it seems that Petitioner believes that the prosecution submitted one persistent felony offender statement that did not comport with the statutory requirements and then the court allowed the state to file another statement so that the statute would be satisfied. (Pet. Mem. Of Law 22-23.)[7]

The issue raised by Petitioner in this regard is entirely a matter of state law and is not cognizable on review of a federal habeas petition. See Ocasio v. Smith, No. 07-CV-2754, 2008 WL 110938, at *17 (S.D.N.Y. Jan. 8, 2008); Estelle v. McGuire, 502 U.S. 62, 67-68, 112 S.Ct. 475, 480 (1991). Moreover, even if this issue did raise a question of a constitutional violation, not such violation occurred here. Under CPL § 400.20(3), when the state wishes to have a defendant sentenced as a persistent felony offender pursuant to PL § 70.10, the state is required to submit a statement to the court. There are two parts to the statement: (1) the list of prior felony convictions; and (2) the background, or history and character of the defendant, that combined, warrant defendant to be found and sentenced as a persistent felony offender. There is nothing contained within CPL § 400.20(3) specifying how this information is to be presented to

---

[7]The analysis set forth in footnote 6 also applies to this portion of Petitioner's claims.

the court or defense counsel, other than it be presented as a "statement" not less than 20 days before any hearing is conducted.

In this case, Petitioner is correct that two documents were submitted to defense counsel and the court.  (Pet. Mem. Of Law, Ex. G and H.)  However, Petitioner misunderstands what those documents were.  A review of the exhibits establishes that exhibit G is the list of predicate felony convictions and exhibit H is a more detailed description of Petitioner's criminal history and the factual circumstances of the predicate felonies.  Petitioner's attorney received the recitation of the prior felony convictions on June 4, 2001.  F: 2.  Defense counsel and the court were served with the persistent felony offender statement detailing the Petitioner's history and background during the hearing on June 19, 2001. There is nothing in the record that indicates that either submission did not comport with CPL § 400.20 or PL § 70.10 or that Petitioner's counsel or the court made any suggestion as to that fact or any objection to the submissions. Petitioner also fails to proffer any legal or factual evidence that the court abused its discretion in allowing these submissions as they are statutorily required under PL § 70.10 and CPL § 400.20.

Therefore, I conclude, and respectfully recommend that you Your Honor should conclude, that Petitioner's claim of abuse of discretion be denied.

### E.   <u>Prosecutorial misconduct</u>

Petitioner alleges that the prosecution engaged in misconduct by withholding <u>Rosario</u> material at the grand jury proceeding.  The subject material was the tape recording of the police officer's transmissions during the pursuit of Petitioner.  Further, Petitioner alleges that he was denied due process because the indictment was based on perjured testimony given by the police officers and not able to be contradicted by the tape.  Additionally, Petitioner argues that his first appellate counsel, Janet Delohery ("Ms. Delohery"), conspired with her husband, an attorney

with the Westchester County District Attorney's Office, to compromise Petitioner's appeal. Lastly, Petitioner contends that Assistant District Attorney Neary ("ADA Neary") forged Jeanine Pirro's (Ms. Pirro's) signature on the second felony offender statement.

### 1.    *Rosario Material*[8]

Alleged errors regarding state grand jury proceedings are not cognizable on federal habeas corpus review.  Pena v. Fischer, 2003 WL 1990331 at *8 (S.D.N.Y. 2003).  The Fourteenth Amendment did not incorporate the Fifth Amendment right to a grand jury.  Id.  As such, "there is no federal right to a grand jury in state criminal proceedings." Id.(citing Fields v. Soloff, 920 F.2d 1114, 1118 (2d Cir.1990).  Furthermore, any errors that occur during a grand jury proceeding are rendered harmless because the evidence and charges are further considered by the petit jury at trial.  Marrero, 2003 WL 21750137, at *11. If the petit jury finds a defendant guilty, then not only was there probable cause to believe the defendant was guilty, but he was in fact found guilty beyond a reasonable doubt.  Marrero, 2003 WL 21750137, at *11.  If the petit jury finds the defendant not guilty, then there is no prejudice.  See Pena, 2003 WL 1990331 at *11.  Therefore, Petitioner's claim that his due process rights were violated due to the state withholding evidence during the grand jury proceeding should be denied.  Moreover, the subject tape was produced to Petitioner's counsel prior to trial, so even if there was an error at the grand jury proceeding, that error was rendered harmless by the subsequent production prior to trial.

### 2.    *Misconduct by appellate counsel*[9]

As to Petitioner's claims that his first appellate counsel conspired with her husband to

---

[8]The analysis set forth in footnote 6 also applies to this portion of Petitioner's claims.

[9]This issue has not been exhausted by presentation to the state court.  The issue is addressed herein on the merits, pursuant to 28 U.S.C. § 2254(a)(2).

sabotage Petitioner's appeal, Petitioner fails to offer any facts in support thereof aside from an alleged authorization from Ms. Delohery for her husband, an Assistant District Attorney, to receive the trial transcripts on Ms. Delohery's behalf.  There is no such authorization contained in the file or any other evidence supporting Petitioner's allegation.  See Shire, 2008 WL 2323379 at *9 (claims unsupported by facts or evidence are to be dismissed); Dory, 865 F.2d at 45 (dismissal is appropriate where the allegations are vague and conclusory.)  Regardless, even if Petitioner could support his claim, Ms. Delohery was relieved and Petitioner was assigned new appellate counsel.  Subsequently, Petitioner, both through counsel and pro se, filed an appeal, as well as other state pleadings.  These pleadings were never dismissed as untimely, or for any other reason that could be attributable to Ms. Delohery.  As such, even if Petitioner's first appellate counsel committed some sort of misconduct, of which the Petitioner has failed to provide any evidence, Petitioner did not suffer any prejudice.

### 3.   *Forgery*[10]

To succeed on a claim of prosecutorial misconduct, Petitioner must show that "'he suffered actual prejudice because the prosecutor's conduct had a substantial and injurious effect or influence in determining the jury's verdict.'" Marrero, 2003 WL 21750137 at *13 (quoting Bentley v. Scully, 41 F.3d 818, 824 (2d Cir.1994).  The conduct must be so egregious as to deny Petitioner his constitutional due process rights.  Marrero, 2003 WL 21750137 at *13  (quoting Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir.1990)).

Petitioner's assertion that Ms. Pirro's signature had been forged on the persistent felony offender statements is utterly without merit.  Even assuming that Petitioner could establish that

---

[10]This issue has not been exhausted by presentation to the state court.  As with the issue immediately preceding this one, the issue is addressed herein on its merits.

Ms. Pirro had not signed the statements, and that ADA Neary had signed Ms. Pirro's name, this would not constitute either forgery or prosecutorial misconduct.  The New York state forgery statutes require not only that the perpetrator falsely makes, completes, or alters a document, but that such act be committed with the intent to defraud, deceive, or injure another.  See New York Penal Law §§ 170.10, 170.15, 170.20, 170.25, 170.27, 170.30.  Falsely making, completing, or altering a document can only occur when such action is done without appropriate authorization from a party entitled to give such authorization.  Petitioner has not alleged that ADA Neary did not have the authority to sign the persistent felony offender statements on the District Attorney's behalf.[11]  Petitioner also has not alleged that any such act, if it occurred, was committed with the intent to defraud or deceive or injure him.  Nor, as noted below, can he establish that he suffered any injury therefrom.

Aside from submitting both persistent felony offender statements along with the signature pages, Petitioner fails to provide any evidence supporting his allegation that ADA Neary forged Ms. Pirro's signature on the persistent felony offender statement.  Nor does Petitioner specify what prejudice this caused him.  Even if ADA Neary did sign Ms. Pirro's name to the documents, Petitioner does not allege any prejudice that this caused him, or that his due process rights were violated in any way.  Upon its own review of the record and the law, this Court is unable to find any legal or factual basis for providing Petitioner relief for this alleged misconduct.

Therefore, I conclude, and respectfully recommend that Your Honor should conclude,

---

[11]It has been the experience of the undersigned in state and federal court, that attorneys in large agencies such as a District Attorney's Office, a County Attorney's Office, an Attorney General's Office, or a United States Attorney's Office, regularly sign documents on behalf of the head of the agency.

that Petitioner's claims of prosecutorial misconduct be denied.

### F.   Police Misconduct

Petitioner alleges that the police involved in this case manufactured evidence and testified falsely at trial.  Petitioner also alleges that the tape recordings of the transmissions of the officers during the pursuit contradicted the trial testimony of the officers, confirming his contention that the officers testified falsely.  Petitioner's claims are essentially an attack on the weight of the evidence and the credibility of the witnesses.  (Pet. Mem. Of Law 29.)[12]

Generally, issues involving the sufficiency of evidence are state issues and "[do not] rise to constitutional dimensions."  Griffin v. Martin, 409 F.2d 1300, 1302 (2d Cir.1969).  To be awarded habeas relief on sufficiency of the evidence grounds, a petitioner must show that based on the evidence on the record at trial, "no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  Jackson v. Virginia, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791-92, 61 L.Ed.2d 560 (1979).  The evidence must be viewed in the light most favorable to the prosecution and any inferences that may be drawn, must be construed in the prosecution's favor.  Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir.1996).  Likewise, issues of credibility "are exclusively the province of the jury."  Goston v. Rivera, 462 F.Supp. 2d 383, 392 (W.D.N.Y. 2006).  On appeal, the court may not "redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact."  Marrero, 2003 WL 21750137 at 14.

_____

[12]This issue was presented to the state court in Petitioner's pro se supplemental brief to the Appellate Division, and was a subject of the application for leave to appeal to the Court of Appeals.  It is therefore exhausted, but the Appellate Division found that it was "unpreserved for appellate review...and, in any event...without merit."  (Resp't Mem. Of Law, Ex. F, p. 2.)  This may constitute a procedural bar to this Court's review of the claim.  See Galdamez v. Keane, 394 F.2d 68, 77 (2d. Cir.2005).  The claim is nevertheless reviewed herein on its merits.

In this case, Petitioner simply states that his claim is supported by "the record, case law and relevant factual exhibits" without specifying any supporting documents or law.  (Pet. Mem. Of Law 29).  Petitioner relies solely on his contention that the tape recording of the officer's transmissions were completely contradictory to the officers' in-court testimony without specifying the alleged contradictions.  As mentioned previously, vague assertions unsupported by facts or evidence may be summarily dismissed.  <u>Dory</u>, 865 F.2d at 45.  However, the tape recording only addressed the issue of whether Petitioner had backed his car into Detective Nicastro intentionally, a charge of which Petitioner was acquitted.  The jury only convicted Petitioner of reckless endangerment in the second degree as it pertained to Detective Wilson and other motorists.  As to those charges, as previously explained, multiple witnesses testified that Petitioner drove the car toward Detective Wilson, causing him to jump out of the way to avoid getting hit.  Additionally, Detective Fennell testified as to Petitioner's erratic driving.  <u>See</u> *supra* section IB.  Petitioner did not contest these facts, only the cause for his actions.

Ultimately, it is the unauthorized use conviction for which Petitioner is still incarcerated.  As to that Count, the officers' testimony regarding the report that the car was stolen was corroborated by the testimony of Ms. Cedeno, the owner of the car, who testified that the car Petitioner was driving at the time of these events was her car, that she had previously reported it stolen, and that she did not know Petitioner, nor had she given him, or anyone else, permission to use her car.  T: 558-61.  Petitioner offered no testimony or evidence, either at trial or in his Petition, to the contrary.  Therefore, this Court is satisfied that sufficient evidence was presented to the jury such that they could have reasonably found Petitioner guilty of the charges of which he was convicted.

As such, I conclude, and respectfully recommend that Your Honor should

conclude, that Petitioner's claim of police misconduct be denied.

## III.  <u>CONCLUSION</u>

For the reasons stated above, I conclude, and respectfully recommend that Your Honor should conclude, that the instant habeas petition should be dismissed in its entirety.  As the Petition presents no questions of substance for appellate review, I conclude, and respectfully recommend, that a certificate of probable cause should not issue.  <u>Rodriguez v. Scully</u>, 905 F.2d 24 (2d Cir. 1990) (*per curiam*); <u>Alexander v. Harris</u>, 595 F.2d 87, 90-91 (2d Cir. 1979).  I further conclude, and respectfully recommend, that the Court should certify pursuant to 28 U.S.C. §1915(a) that an appeal from this order would not be taken in good faith.  <u>See</u> <u>Coppedge v. United States</u>, 369 U.S. 438 (1962).

## IV.  <u>NOTICE</u>

Pursuant to 28 U.S.C. § 636(b)(1), as amended, and Fed. R. Civ. P. 72(b), the parties shall have ten (10) days, plus an additional three (3) days, pursuant to Fed. R. Civ. P. 6(e), or a total of thirteen (13) working days, <u>see</u> Fed. R. Civ. P. 6(a), from the date hereof, to file written objections to this Report and Recommendation.  Such objections, if any, shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of The Honorable Kenneth M. Karas, at the United States District Court, Southern District of New York, United States Courthouse, 300 Quarropas Street, White Plains, New York 10601, and to the chambers of the undersigned at the same courthouse.

Failure to file timely objections to this Report and Recommendation will preclude later appellate review of any order of judgment that will be entered.

Requests for extensions of time to file objections must be made to Judge Karas.

Dated: May 18 , 2009
     White Plains, NY

Respectfully submitted,

LISA MARGARET SMITH
Chief United States Magistrate Judge
Southern District of New York

A copy of the foregoing Report and Recommendation has been sent to the following:
Kenneth M. Karas, U.S.D.J.